IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

97 DEC 12 PM 3: 44

U.S. DISTRICT COURT
N.D. OF ALABAMA

KATIE GILBERT ANDERSON, as )
personal representative of )
the estate of MINNIE )
ANDERSON, deceased, )
                 )   CIVIL ACTION NO.
      Plaintiff )
                 )   CV-96-AR-2703-S
      vs. )
)
METROPOLITAN LIFE INSURANCE )
COMPANY, et al., )
)
      Defendants )

ENTERED

DEC 1 2 1997

### MEMORANDUM OPINION

The court has before it Metropolitan Life Insurance
Company's ("MetLife") and The Travelers Insurance Company's
("Travelers") motion for summary judgment on all claims asserted
by plaintiff Katie Gilbert Anderson ("Gilbert" or "plaintiff") in
her capacity as personal representative of the estate of Minnie
Anderson, deceased ("Anderson" or "plaintiff").[1]  MetLife's
request for summary judgment on plaintiff's state law claims is
moot.  Plaintiff is entitled to pre-judgment interest and
attorney's fees under ERISA, but summary judgment is appropriate
against her on her other federal claims because there exists no
genuine issues of material fact on those claims, and defendant is
entitled to judgment as a matter of law.

---

[1] The court will refer to Gilbert and Anderson collectively as
"plaintiff" and to defendants collectively as "MetLife" or "defendant," unless
otherwise necessary.

## I. Facts

Plaintiff sues MetLife, pursuant to Alabama state common law, for breach of contract (Count I), bad faith refusal to pay (Count II), negligent hiring and training (Count III), and negligence in processing plaintiff's claim, along with negligence in failing to following the appropriate administrative procedures for processing claims (Count VI).  Plaintiff, knowing that these claims have been "super-duper" preempted, must be hoping that they, or some of them, have been transmogrified into ERISA claims, as the Eleventh Circuit suggested in *Brown v. Connecticut General Life Ins. Co.*, 934 F.2d 1193, 1196 (11th Cir. 1991), as follows:

> "ERISA 'completely preempt[s]' the area of employee benefit plans and thus <u>converts</u> state law claims into federal claims when the state law claim is preempted by ERISA and also falls within the scope of ERISA Section 502(a), 29 U.S.C. § 1132(a)."  (emphasis supplied).

(quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S. Ct. 1542, 1546-47 (1987)).  As much as this court would like to accommodate plaintiff in this regard, it would be a foolhardy gesture, because the Eleventh Circuit has never found a state law claim that has been "converted" into an ERISA claim.

Anderson also seeks, pursuant to 29 U.S.C. § 1132, recovery of benefits allegedly due her under an ERISA life insurance plan

2

(Count IV) and recovery of damages for federal common law breach
of an ERISA fiduciary duty (Count V).

The present dispute surrounds the payment of death benefits
on the life of Jacob Anderson ("Jacob"), who was Anderson's son
and Gilbert's spouse.  Jacob was a railroad employee covered
under a group life insurance plan originally administered by
Travelers.    In 1961, Jacob completed a life insurance
beneficiary designation form indicating that death benefits
should be paid to

> 1. Minnie Anderson: mother
> 2. Dorothy Walker: daughter

Def.'s Br. Ex. 3.  Jacob died on January 19, 1977, but Anderson
first learned of the insurance policy in December, 1995.  By this
time, however, Walker had died.

MetLife took over administration of the fund's insurance
claims on January 1, 1996, and initially denied Anderson's claim
for Jacob's benefits because there was some confusion over his
employment status at the time of death.  After several attempts
to seek an internal appeal of the denial, Anderson filed suit on
September 6, 1996.  MetLife then re-evaluated Anderson's claim
and paid her one half of the insurance proceeds in February 1997.
Shortly thereafter Anderson, who was 100 years old, died.  The

3

personal representative of her estate has been substituted.

## II. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact and...the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c). Once a motion for summary judgment is filed, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise..., must set forth specific facts showing that there is a genuine issue for trial." F.R.Civ.P. 56(e).

## III. State Law Claims

On January 3, 1997, this court granted MetLife's motions to dismiss plaintiff's state law claims and to strike her jury demand, reserving the right to empanel an advisory jury. Plaintiff amended her complaint by reasserting her previously plead state law claims (Counts I, II, and III), adding a new state law claim for negligent processing of claims (Count VI), and adding federal claims (Counts IV and V). MetLife then sought, *inter alia*, dismissal of the previously asserted state law claims, as well as the newly asserted state law negligence claim. On March 3, 1997, this court granted MetLife's motion to

4

dismiss solely to the extent that the motion was consistent with
the court's January 3 order dismissing plaintiff's state law
claims.  Inasmuch as <u>all</u> the state claims have been dismissed,
MetLife's present motion for summary judgment on these claims is
moot.


     Plaintiff has not and cannot direct this court to any legal
authority which would indicate that this court's dismissal of the
state law claims was erroneous.  Instead, she understandably
complains about the conflict between Alabama and federal court
interpretations of ERISA law.  Specifically, she complains
about the rock and the hard place between which she finds herself
because Alabama's courts allow extra-contractual damages,
punitive damages, and jury trials in ERISA cases, unlike the
federal courts.  While this court sympathizes with plaintiff's
dilemma, particularly because she filed her suit in state court,
this court cannot act as a legislative body and resolve the
conflict between Alabama and federal court interpretations of
ERISA law.  *See Cravens v. Aetna Life Ins. and Annuity Co.*, 97-
AR-2568-E (Nov. 28, 1997)(unpublished opinion handed down by this
court addressing ERISA "super-duper" preemption).  Because the
statute here is a federal statute, this court is bound by the
decisions of the Eleventh Circuit and the United States Supreme
Court, to the limited extent this court can understand them.

This court recognizes that ERISA is a nightmare for beneficiaries and participants and has said so many times.

### IV. Federal Common Law Breach Of Fiduciary Duty

Anderson maintains that she has a cause of action for federal common law breach of fiduciary duty, pursuant to 29 U.S.C. §§ 1109 and 1113. *See Simmons v. Southern Telephone and Telegraph Co.*, 940 F.2d 614, 617 (11th Cir. 1991). MetLife supports its motion for summary judgment on this count by arguing that individual litigants cannot pursue such claims.

While an individual litigant may <u>not</u> seek <u>damages</u> for common law breach of fiduciary duty, pursuant to 29 U.S.C. § 1113 <u>(a)(2)</u>, there are circumstances under which an individual litigant <u>may</u> seek <u>equitable</u> relief in an ERISA case pursuant to 29 U.S.C. § 1132 <u>(a)(3)</u>. *Varity Corp. v. Howe*, ___ U.S. ___, ___, 116 S. Ct. 1065, 1075 - 79 (1996). Nonetheless, there is nothing to indicate that plaintiff here seeks equitable relief or, if so, what form of equitable relief. More importantly, plaintiff has failed to address this issue in her response to defendant's motion. Where a plaintiff asserts a cause of action in her complaint, but fails to address the claim in response to a motion for summary judgment, such claim is deemed abandoned. *Lyles v. City of Riviera Beach*, 126 F.3d 1380 (11th Cir. 1997)

(citations omitted).  Therefore, summary judgment for MetLife is appropriate on plaintiff's claim for federal common law breach of fiduciary duty.

## V.  ERISA Claim For Recovery Of Benefits And Interest
### A. Applicability of ERISA

The court notes that plaintiff does not dispute that the plan involved in this case is governed by ERISA.  ERISA covers certain employee welfare or pension benefit plans which are established or maintained by an employer engaged in commerce or in any industry or activity affecting commerce.  29 U.S.C. §§ 1002, 1003(a).  *See Donavan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982); Jordan *v. Reliable Life Ins. Co.*, 694 F. Supp. 822, 824 - 25 (N.D. Ala. 1988).  Specifically, "any plan, fund, or program...established or maintained by an employer...for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits, or benefits in the event of sickness', accident, disability death or unemployment..." qualifies as an "employee welfare benefit plan" for purposes of ERISA.  29 U.S.C. § 1002(1).  An employer established plan includes plans established by a "group or association of employers."  29 U.S.C. § 1002(5).

7

In the present case, the plan was established by a railroad employer's organization to provide death benefits for its employees and beneficiaries. Coyne Dep., Pl.'s Ex. 2. Neither the plan, nor the employer organization falls within an exempted category. Therefore MetLife's insurance plan is an "employee welfare benefit plan" for purposes of ERISA. *See Brown v. Connecticut General Life Ins. Co., supra* (holding that the beneficiary of a life insurance policy can sue pursuant to 29 U.S.C. § 1132, the civil enforcement provision of ERISA).

### B. Claim For Additional Benefits

MetLife argues that summary judgment is appropriate on plaintiff's claim for recovery of additional benefits because Anderson has received all the benefits to which she is entitled under the plan: $3,000. *See* Gilbert Dep. at 30. The plan provided death benefits of $6,000. Coyne Dep., Pl.'s Ex. 2. The insurance beneficiary form explains how death benefits were to be distributed:

> If two or more persons are designated as Beneficiaries, payment shall be made in equal shares to such persons, if all are living; if not, payment shall be made in equal shares to the surviving Beneficiary or Beneficiaries, unless otherwise specified herein.

Def.'s Br. Ex. 3. Because both named beneficiaries (Anderson and Walker) were alive at the time of Jacob's death, Anderson was

8

only entitled to received one half of the proceeds, persuasively
argues MetLife.

The court agrees that Anderson is only entitled to receive
one half of the death benefits.[2]  There is no ambiguity to be
resolved.  Both named beneficiaries were alive, in 1977, when
Jacob died.  At that time, Walker had an enforceable claim for
one half of the policy proceeds.  Her failure to pursue the claim
during her life did not extinguish her claim and give Anderson
the right to recover the entire $6,000.  Instead, the right to
pursue Walker's claim merely passed to her estate and/or heirs.
Such a result flows as a natural consequence of general contract
law principles, and there is no language in the insurance plan
summary which would justify a contrary result.

In an order entered on March 25, 1997, this court virtually
invited plaintiff, if she wanted to do so, to amend her complaint
to seek contractual damages for mental anguish.  Her Count IV for
ERISA benefits, in effect a breach of contract action, sought,
*inter alia*, "such other relief as the court deems fit."
Plaintiff understandably must have reached the conclusion that
she could not prove that any mental anguish resulted from

---

[2]  MetLife is presently processing a claim from one of Walker's heirs
for the remaining $3,000.  Def.'s Reply Br., Ex. E.

9

defendant's failure to pay timely and/or that she could not prove that such damage was within the contemplation of the parties and embraced in the contract. If this was plaintiff's thinking, she was correct.

### C. Claim For Interest

Pursuant to Alabama Code §§ 8-8-1 and 8-8-8, plaintiff asserts that she is entitled to eight percent (8%) interest per annum on the death benefits she has received. MetLife counters that plaintiff is not entitled to interest under Alabama law because the policy was not issued in Alabama. MetLife further argues that plaintiff is not entitled to receive interest because the insurance policy does not provide for interest.

"[T]he award of prejudgment interest under ERISA is a matter committed to the sound discretion of the trial court." *Moon v. American Home Assurance Co.*, 888 F.2d 86, 89 - 90 (11th Cir. 1989). Indeed, interest should be awarded in ERISA cases in order to fully compensate the plaintiff, *In re Bicostal Corp.*, 202 B.R. 998, 1007 (M.D. Fla. 1996) (citations omitted), and to prevent the defendant's unjust enrichment through interest earned on the unpaid funds. *Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 697 (7th Cir. 1991). "Relieving defendants from the payment of prejudgment interest would create an incentive for

10

insurers to delay payment...." *Id.*

In *Nightingale v. Blue Cross/Blue Shield of Alabama,* 832 F. Supp. 1456, (N.D. Ala. 1993), *aff'd* 41 F.3d 1476, 1484 (11th Cir.), *cert. denied,* ___ U.S. ___, 115 S. Ct. 2002 (1995), this court granted 1.5% per month prejudgment interest in an ERISA case based on one of two theories: 1) § 27-1-17(b)[3] of the Alabama Code as applied against an Alabama insurer, or (2) "federal common law arrived at by analogy." 41 F.3d at 1484. The Eleventh Circuit Court of Appeals upheld this court's decision noting that "[i]t was clearly within the district court's discretion to use [the Alabama statute] to fill in a gap in ERISA law." *Id.*; *Smith v. American Int'l Life Assurance Co. of New York,* 50 F.3d 956, 958 (11th Cir. 1995) (reaffirming *Nightingale*). Although the insurance policy involved in the present case was not issued in Alabama, this court exercises its discretion to apply the 1.5% interest rate "as a matter of

---

[3] § 27-1-17 provides in pertinent part:

"(a) All persons, firms, corporations or associations issuing health and accident insurance policies within this state shall consider claims made thereunder and, if found to be valid and proper, shall pay such claims within 45 days after the receipt of proof of loss under such policies. Benefits due under the policies and claims are to be considered overdue if not paid within 45 days after the insurer receives reasonable proof of the fact and amount of loss sustained....

(b) If the claim is not denied for valid and proper reasons by the end of said 45 day period, the insurer must pay the insured one and one-half percent per month on the amount of said claim until it is finally settled or adjudicated."

36.   Moreover, after months of discovery, there is no evidence in the record to support's Anderson's assertion that she filed a claim for death benefits the same year Jacob died.   Finally, Anderson is now deceased and this court cannot observe her demeanor at trial in order to determine the veracity of the interrogatory response.   Therefore, plaintiff is not entitled to calculate interest from the date of Jacob's death.

On the other hand, it is unclear from the record the precise date upon which Anderson submitted Jacob's death certificate and any other appropriate documents, thereby entitling her to receive the insurance proceeds.   At this juncture, the court cannot determine the date to begin calculating pre-judgment interest. Consequently, this issue must await trial for its resolution.

### VI. Failure To Exhaust Administrative Remedies

MetLife asserts that summary judgment is appropriate on all plaintiff's claims because she failed to exhaust her administrative remedies.   "It is well-established in this Circuit that plaintiffs in ERISA cases must normally exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court."   *Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990).   However, a district court is guilty of an abuse of

13

discretion if it refuses to excuse a plaintiff's failure to
exhaust where exhaustion would be futile, the remedy sought be
the plaintiff would be inadequate, or the defendants have
frustrated the plaintiff's attempts to exhaust. *Curry v.
Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 846
- 47 (11th Cir. 1990) (citations omitted).

In the present case, the court finds that plaintiff did
attempt to exhaust her administrative remedies, but her attempts
to do so were completely frustrated by MetLife's ambiguous
statements regarding the address to which plaintiff should have
submitted her appeal. In response to plaintiff's initial inquiry
regarding benefits, she received a "First Notice of Claim" form
and a letter explaining how to formally assert her claim for
Jacob's benefits. Coyne Dep., Pl.'s Ex. 6. Both documents were
from "MetraHealth." Coyne Dep., Pl.'s Ex. 17, 18. Later, the
plaintiff's attorney sent inquiries to MetraHealth about
plaintiff's claim on two occasions, April 2, 1996 and May 17,
1996. On May 19, 1996, "<u>MetLife</u>" sent plaintiff a letter denying
the claim plaintiff had submitted in January 1996 to
"<u>MetraHealth</u>." Coyne Dep., Pl.'s Ex. 4. In the denial letter,
which contained a Utica, New York return address, MetLife
indicated that plaintiff could appeal its decision by sending the
appropriate documents to the "MetLife Office which processed the

14

claim...." *Id*. With twenty-twenty hindsight, however, MetLife

points out that the address for the office to which plaintiff was

to submit her appeal was the Utica, New York address that

appeared on the top of the letter. Mastro. Aff. at ¶ 13.

However, nothing in MetLife's letter indicates that it is a

separate company from "MetraHealth," the company whose forms

plaintiff used to apply for benefits. In addition, nowhere in

the denial letter does MetLife indicate that the claim should be

sent to it, rather than MetraHealth who, for all plaintiff knew,

"processed the claim." Thus, plaintiff's confusion about where

she should send her appeal was justified.

To further complicate the story, a few days after MetLife

sent the denial letter, "MetraHealth" sent correspondence to

plaintiff indicating that it was unable to "identify coverage,"

and provided a form upon which plaintiff could supply additional

information. The court notes that there was nothing in the

MetraHealth letter which would have alerted the plaintiff and

caused her to question the address to which she had mailed her

previous letters. Therefore, shortly after receiving the

MetraHealth correspondence, plaintiff's attorney returned the

form to MetraHealth. When he failed to receive a response,

plaintiff's attorney mailed another letter to MetraHealth on June

15

6, 1996.

MetLife asserts that it never received plaintiff's appeal letters. It further asserts that MetraHealth "was a company formed to administer <u>health</u> benefits" and is an entirely separate company from MetLife. Def.'s Reply Br. at 3 (emphasis supplied). However, the MetraHealth "First Notice of Claim" form instructs the applicant to complete the form in order to collect on "Life Insurance, Accidental Death and Dismemberment" claims. These are not health insurance claims. Coyne Dep., Pl's Ex. 7. Thus, MetLife's assertion that MetraHealth administers solely "health" benefits is contradicted by MetraHealth's own claim form. In addition, even if MetLife never received plaintiff's appeal correspondence it did receive notice of plaintiff's original claim; MetLife admits that it first received notice of plaintiff's claim in January 1995, the month plaintiff mailed her claim forms to <u>MetraHealth</u>. *See* Coyne Dep., Pl.'s Ex. 21; Mastro Aff., ¶ 9. Consequently, there was obviously some communication between the two companies, and plaintiff should not have to shoulder the responsibility for any later mis-communication caused by the companies. "[A]s a general rule a party should not be allowed to profit from its own wrongs...." *Curry*, 891 F.2d at 847 n.7. Accordingly, MetLife is not entitled to summary judgment on its "failure to exhaust" defense. Plaintiff was not

16

required to exhaust herself.

### VII.   Anderson's Request For Attorney's Fees

ERISA provides that a prevailing party may seek attorney's fees.  29 U.S.C. § 1132(g).  The district court has discretion to award fees, keeping the following factors in mind:

> (1) the degree of the opposing parties' culpability or bad faith;  (2) the ability of the opposing  parties to satisfy an award of attorney's fees;  (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself;  (5) the relative merits of the parties' positions.

*Freeman v. Continental Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993) (citations omitted).  Despite the Eleventh Circuit's repeated enumeration of these factors, it has noted that none

> of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address.  In particular types of cases, or in any individual case, however, other considerations may be relevant as well.

*Id.* (citations omitted).  Finally, "[i]n applying these criteria,...courts should bear in mind ERISA's essential remedial purpose: to protect the beneficiaries of private pension plans. *Nachwalter v. Christie*, 805 F.2d 956, 962 (11th Cir. 1986).

17

MetLife argues that plaintiff is not entitled to attorney's fees because she cannot not show: (1) bad faith, (2) the deterrence value in a fee award, (3) any benefit to other plan beneficiaries, (4) resolution of a significant legal question, and (5) lack of merit in defending this lawsuit.  While the court finds that plaintiff is entitled to attorney's fees, the court also recognizes that the facts of this case merit limiting plaintiff's fee recovery.

As the Eleventh Circuit has noted, the five attorney's fee factors "should guide but not control the district court's decision...." *Nachwalter*, 805 F.2d at 961 - 62.  In the present case, MetLife correctly asserts that there is no evidence of bad faith and that this case will not resolve any significant legal questions, unless on appeal.  On the other hand, a fee award will benefit other plan beneficiaries faced with ambiguous information regarding the address to which they must submit appeals.  A fee award in this case will create an incentive for MetLife and other insurance companies to clearly provide beneficiaries with the address to which they must submit appeals.  Such details are particularly important in the present economic environment where companies are constantly merging or creating affiliations with other companies. Beneficiaries should not have to guess which address or company is the proper recipient for an appeal and face

18

a failure to exhaust defense should they make the wrong guess.
Although there is no evidence of bad faith in the present case,
MetLife and other insurance companies have an obligation to
eliminate the guess work.  If they choose not to do so and a
beneficiary must file suit, in order to obtain benefits, the
insurance company should be responsible for the beneficiary's
attorney's fees.  This decision merely furthers the "remedial
purpose [of ERISA]: to protect the beneficiaries of private
pension plans."  *See Nachwalter*, 805 F.2d at 962.

After determinating the amount of interest due, the court
will undertake to fix attorneys fees under Rule 54(d)(2).


### V. Conclusion

MetLife's motion for summary judgment on plaintiff's state
law claims is moot.  However, MetLife is entitled to summary
judgment on all federal claims except plaintiff's demand for pre-
judgment interest and attorney's fees.

DONE this __12th__ day of December, 1997.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

19

federal common law." Accordingly, MetLife is not entitled to summary judgment on plaintiff's claim for pre-judgment interest.


### D. Calculation Of The Interest Period

Plaintiff asserts that any pre-judgment interest must be calculated from the date of Jacob's death. In her answer to defendant's interrogatories, Anderson asserts that she filed her claim for death benefits in 1977, the same year Jacob died. However, in her unverified complaint she asserted that she did not learn of the insurance policy until December 1995. Compl. ¶ 11. Because an unverified complaint "does not constitute competent summary judgment evidence," the court must disregard the statement found in Anderson's complaint. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Barker v. Norman*, 651 F.2d 1107, 1114 - 15 (5th Cir. 1981)).[4]


Notwithstanding Anderson's interrogatory response to the contrary, the court has no choice but to find that Anderson only became aware of the insurance benefits in December, 1995. Gilbert has testified she is uncertain whether Anderson knew about the benefits before December 1995. Gilbert Dep. at 35 -

---

[4] The Eleventh Circuit has adopted as precedent all Fifth Circuit Court of Appeals cases decided prior to October 1, 1981. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981).

12